## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| EVA MITCHELL, | NO. 22-CV-00195-ADA |
| Plaintiff, | CIVIL ACTION COMPLAINT |
| vs. | |
| BAYLOR UNIVERSITY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## ORIGINAL COMPLAINT IN CIVIL ACTION AND JURY DEMAND

COMES NOW, Plaintiff, Eve Mitchell, and files her Original Complaint and Jury Demand against Defendant Baylor University, upon the following causes of action and in support thereof sets forth as follows:

## PARTIES

1. Plaintiff Eva Mitchell is an adult individual residing at 520 East Cambridge Lane, Nicholasville, Kentucky 40356.

2. At all times relevant hereto, Plaintiff Eva Mitchell was a student at Baylor University and competed for the Baylor University Women's Soccer Team.

3. Defendant Baylor University is a private university located in Waco, Texas.

## JURISDICTION AND VENUE

4. This Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) as the matter in controversy is between citizens of different States and exceeds the sum or value of $75,000, exclusive of interest or costs.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2) as the Defendant resides in this district, is a resident of the state in which this district is located, and a substantial part of the events or omissions giving rise to the cause of action asserted by Plaintiff occurred within this jurisdiction.

## FACTUAL ALLEGATIONS

6. Eva Mitchell is a Midfielder/Forward who played for the Baylor University Women's Soccer team from the Spring semester of 2019 through the Fall Season of 2020.

7. Baylor University Women's Soccer competes in the National Collegiate Athletic Association (NCAA) and is bound to follow the rules and regulations promulgated by the NCAA in the administration of its athletic programs.

8. Ms. Mitchell was recruited from the University of Kentucky by Baylor University to play for the team given her exceptional soccer talent.

9. The video highlight package which was reviewed by Baylor University showing Ms. Mitchell's talent did not include any instances of her heading a soccer ball.

10. Additionally, Ms. Mitchell excelled in her schoolwork and graduated in the top of her class in high school and performed excellent in her academic pursuits while in college.

11. At the time Ms. Mitchell began playing soccer at Baylor University on a scholarship, and throughout her career there, the head coach of the Baylor University Women's Soccer team was Paul Jobson.

12. Coach Jobson was an aggressive coach who subjected the women on the soccer team to repetitive, brutal, dangerous, and unnecessary heading drills during practice.

13. Defendant Baylor University was on notice of Coach Jobson's aggressive coaching and was aware of his heading drills increasing the risk of harm and injury to players, and in fact causing concussions to Ms. Mitchell and symptoms to some of the other women players on the team.

14. Despite being on notice of the dangerous heading drills, Defendant Baylor University did nothing to prevent the injuries and damages sustained by Plaintiff and described herein.

15. Specifically, in February 2019, Ms. Mitchell and the rest of the team were forced to engage in a drill where Coach Jobson and his staff shot overinflated soccer balls from a mechanical device with the velocity turned up approximately 70 yards away, and the players were required to "head" the ball.

16. "Heading" refers to the type of action soccer players take when they use their head to make contact with, control, or advance the soccer ball.

17. "Heading" places a great deal of strain on the player's head and neck, and increases the risk of players, like Eva Mitchell, sustaining head and neck injuries, including, but not limited to, strains, concussions, and whiplash.

18. Baylor University was the only women's soccer program in the country utilizing this drill along with other punting drills wherein the coaches would repeatedly punt overinflated

balls the width of the field requiring the girls to advance the ball as far as possible using their heads.

19. Upon information and belief, these extremely dangerous and repetitive header drills in practice are not used in any level of women's collegiate soccer.

20. This machine utilized by the coaching staff for this drill is not intended to repeatedly shoot balls at players heads and is not intended to use overinflated balls in the machine and is not intended to be turned up to a high velocity for purposes of conducting repeated headers.

21. During a February 2019 practice, which was performed in the cold weather with overinflated balls with the velocity of the machine turned up, Ms. Mitchell felt like her brain was smashed after she took the first header during this drill.

22. Ms. Mitchell, along with the other players, were forced to complete an additional seven to eight headers during this practice.

23. Most of the women, including Eva Mitchell, complained about pain associated with this drill and Ms. Mitchell reported to a team athletic trainer, Ms. Kristin Bartiss, her headaches and concussion symptoms.

24. Several other women on the team complained to a Baylor University trainer about the drills, including how hard and fast the balls were shot.

25. Ms. Mitchell was diagnosed with a concussion following this drill, from which she eventually recovered.

26. Eva Mitchell's father, Doug Mitchell, spoke with Kristin Bartiss, a Baylor University Athletic Trainer and employee of the school, about his daughter's injury following this drill.

27. Ms. Bartiss indicated that Ms. Mitchell's concussion was likely caused by her weak neck, along with the coach using overinflated balls shot too hard out of a ball launching machine which were hardened even further by the cold weather.

28. At this point in February 2019, Baylor University, through the coaching staff and its athletic trainers, were on notice that the women on the soccer team were being subjected to a dangerous drill that increased their risk of harm of acute and chronic brain damage.

29. At the start of the athletic season around August of 2020, in preparation for the season, Coach Jobson and the staff continued to subject the players to unnecessary, aggressive, and repetitive header drills.

30. Despite knowing that Eva Mitchell had sustained injuries from repetitive, aggressive, and unnecessary heading drills, which the players were forced and expected to participate in to maintain their spots on the team, Baylor University did nothing to protect its players.

31. Ms. Mitchell in particular felt threatened to participate based on the fact that she had been removed from a game the previous season by Coach Jobson after she failed to "head" a line drive shot during a game.

32. Given her scholarship status, Ms. Mitchell had no other option than to fully participate in the dangerous and repetitive header drills.

33. No member of the coaching staff, training staff, or administration for Baylor University stepped in to prevent these dangerous, unnecessary, and repetitive header drills from being performed in practices, disciplined Coach Jobson for subjecting the women to these drills, or oversaw the practices to ensure that Coach Jobson did not continue such reckless conduct with these women.

34. In August 2020, Ms. Mitchell sustained her second diagnosed concussion during practice over a three day period of practices which involved continuous and repetitive punting and machine ball header drills as previously described with overinflated balls, shot from a long distance with extreme velocity and force.

35. As a result of this second diagnosed concussion, Ms. Mitchell experienced significant injuries, pain and suffering, to which she continues to suffer this day.

36. Specifically, Ms. Mitchell has been diagnosed with persistent and debilitating dizziness with diagnoses of post-concussion syndrome, persistent postural-perceptual dizziness, central vestibular disorder, dysautonomia, depression and anxiety.

37. Ms. Mitchell had to take a leave of absence from school because she could not complete her work.

38. Ms. Mitchell's injuries were so bad from her second diagnosed concussion that she had difficulty walking in her home and requires full-time assistance of her parents to assist with her activities of daily living.

39. Ms. Mitchell continues to receive treatment for her injuries, and it is unclear whether she will ever make a neurological recovery from the concussion she sustained in August 2020.

## CAUSES OF ACTION

### COUNT I

(**Direct Negligence – Vicarious Liability/Respondeat Superior**)

40. Plaintiff incorporates the aforementioned paragraphs as if they have been set forth fully herein.

41. Baylor University had a duty of care at all times to provide a safe environment for athletes like Eva Mitchell.

42. The injuries and damages hereinafter set forth were caused by the direct and proximate result of the actions of Baylor University's employees who subjected Eva Mitchell to a dangerous, unnecessary, and repetitive header drills that directly caused her neurological injuries.

43. Plaintiff affirmatively pleads that any alleged acts or negligence on the part of the Defendant's employees were committed while acting within the course and scope of employment with Defendant Baylor University. These actions are thus imputed to Defendant Baylor University under the legal theory of vicarious liability/*respondeat superior*.

44. Baylor University is vicariously liable for the actions of its employees, who were then and there acting within the course and scope of their employment with the university.

45. Baylor University departed from the standard of care in that they allowed its coaching staff and athletic training staff to sanction the use of repetitive, unnecessary, and dangerous drills whereby players "headed" balls.

46. As a direct and proximate result of Baylor University's negligent, reckless, intentional, wanton, and depraved acts and omissions described herein, Plaintiff suffered, and continues to suffer, conscious pain and suffering, inconvenience, mental anguish, and humiliation.

47. As result of Baylor University's negligence, which was a direct and proximate cause of the Plaintiff's damages described herein, and thus are liable for the damages set forth.

**WHEREFORE**, Plaintiff seek compensatory, consequential, punitive, and any other damages this Honorable Court deems appropriate against Baylor University in an amount in excess of the sum of Seventy-Five Thousand ($75,000.00) Dollars exclusive of interests and costs.

**JURY TRIAL DEMANDED.**

## COUNT II

### (Negligent Hiring, Monitoring, and Oversight)

48. Plaintiff incorporates by reference the aforementioned paragraphs as if they have been set forth fully herein.

49. Baylor University is responsible for the hiring, training, monitoring, and oversight of all its employees, including the athletic training staff and coaching staff responsible for the women's soccer program.

50. Baylor University's actions were negligent in the following particulars:

   a. Failed to monitor the actions of the coaching staff as it related to subjecting its athletes to dangerous and unnecessary drills;

   b. Failed to hire competent training staff who would recognize the risk athletes were in due to the coaching staff's insistence on subjecting the players to dangerous drills which increased their risk of harm;

   c. By hiring members of the coaching staff, training staff, and administration that were not qualified to provide such services;

   d. By failing to properly train the staff which were hired;

   e. By failing to monitor the staff and review their performance to ensure that only qualified individuals were providing coaching, training, and administrative services at the university;

   f. By failing to create, implement, and enforce adequate rules, policies, and procedures for the safety and protection of athletes like Eva Mitchell for their safety and protection;

   g. By failing to follow NCAA guidelines related to the safety and wellbeing of athletes like Eva Mitchell;

   h. By failing to discipline its employees, including the coaching staff, training staff, and administration when it knew, or should have known, that its staff was engaging in conduct that increased the risk of harm to athletes like Eva Mitchell.

51. As a direct and proximate result of Baylor University's failure in hiring, training, monitoring, and oversight, Plaintiff Eva Mitchell was injured and suffered the damages as alleged herein.

52. Baylor University's negligence and intentional, reckless, wanton, and depraved conduct was a direct and proximate cause of the Plaintiff's injuries, and the Defendant is liable for the damages set forth herein.

### COUNT III

### (Negligent Retention)

53. All preceding paragraphs of Plaintiff's Complaint are incorporated herein as if set forth more fully at length.

54. Plaintiff further pleads that Defendant Baylor University negligently retained its employees, like Coach Jobson and his staff, when the Defendant knew, or should have known, that the actions of its employees as pled herein increased the risk of harm and injury to players like Plaintiff.

55. The continued retention of its negligent, reckless, wanton, careless, and malicious employees created an unreasonable risk of harm to others, including Plaintiff.

56. Accordingly, Defendant Baylor University's negligent retention proximately caused Plaintiff's injuries and damages, as identified herein.

### COUNT IV

### (Gross Negligence)

57. All preceding paragraphs of Plaintiff's Complaint are incorporated herein as if set

forth more fully at length.

58. Plaintiff alleges that all acts of commission and omission on the part of the Defendant Baylor University, taken singularly or in combination, constitute gross negligence and were the proximate cause of Plaintiff's injuries and damages.

59. Defendant Baylor University's acts and omissions, when viewed objectively from said Defendant's standpoint at the time such acts and omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.

60. Defendant Baylor University had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff with an intentional state of mind.

61. Such gross negligence was a proximate cause of the occurrence and Plaintiff's injuries and damages.

62. Accordingly, Plaintiff is entitled to punitive and/or exemplary damages.

## DAMAGES

As a result of the Defendant's actions and/or inactions, Plaintiff prays for the following damages from this Honorable Court:

    a. Past and future physical pain and suffering of Plaintiff;

    b. Past and future mental anguish of Plaintiff;

    c. Past and future medical expenses;

    d. Past and future loss of earning capacity;

    e. Past and future physical impairment;

      f.      Court costs;

      g.      Punitive/Exemplary damages; and,

      h.      Any and all other damages, both general and special, at law and in equity, to which this Honorable Court determines Plaintiff may be justly entitled.

**WHEREFORE**, Plaintiff seek compensatory, consequential, punitive, and any other damages this Honorable Court deems appropriate against Defendant in an amount in excess of the sum of Seventy-Five Thousand ($75,000.00) Dollars exclusive of interests and costs.

**JURY TRIAL DEMANDED.**

      Respectfully submitted,

      By: /s/ Robert Stem, Jr.
      ROBERT STEM, JR.
      State Bar No: 24068667
      801 Washington Ave., Ste. 300
      Waco, Texas 76701
      (254) 776-0554 – phone
      (254) 442-7937 – fax
      robert@rstemlaw.com

      ATTORNEYS FOR PLAINTIFF

      **-AND-**

      By: /s/ **Jason E. Luckasevic**
      Jason E. Luckasevic, Esquire
      PA ID NO. 85557
      jluckasevic@gpwlaw.com
      *PRO HAC FORTHCOMING*

**GOLDBERG, PERSKY & WHITE, P.C.**
11 Stanwix Street
18th Floor
Pittsburgh, Pennsylvania 15222
412-471-3980 – phone
412-471-8308 – fax
jluckasevic@gpwlaw.com