IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| EVA MITCHELL, | § | |
| Plaintiff, | § § § | 6:22-CV-00195-ADA-DTG |
| v. | § § | |
| BAYLOR UNIVERSITY, | § § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE ALAN D ALBRIGHT,
     UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendant's 12(b)(6) Motion to Dismiss for Failure to State a Claim (ECF No. 5). For the following reasons, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED IN PART** and **DENIED IN PART** without prejudice.

I.    FACTUAL BACKGROUND

Plaintiff Eva Mitchell brings claims of negligence, negligent hiring, monitoring, and oversight, negligent retention, and gross negligence against Defendant Baylor University. ECF No. 1 ¶¶ 40-62. Plaintiff was a student athlete for the Baylor University Women's Soccer Team from Spring 2019 to Fall 2020. *Id.* ¶¶ 2, 6. During this period, Paul Jobson was the head coach. *Id.*

1

¶ 11. Defendant claims that Plaintiff signed an Assumption of Risks and Release Agreement for each academic year she participated on the soccer team. ECF No. 5 ¶¶ 7, 8. Plaintiff's Original Complaint makes no mention of the releases nor references them at any point.

In February 2019, Plaintiff alleges that the Baylor Women's Soccer coaching staff forced the team to participate in a drill where players would repeatedly "head" overinflated balls shot from a mechanical device at a high velocity. ECF No. 1 ¶ 15. Plaintiff claims that Defendant was the only collegiate women's soccer program in the country running such drills. *Id.* ¶ 18. Afterwards, Plaintiff alleges that she reported her headaches and concussion symptoms to Kristin Bartiss, a Baylor University athletic trainer and employee. *Id.* ¶ 23. Plaintiff asserts that many other players complained to a trainer about the nature of the drill and the pain associated with it. *Id.* ¶¶ 23, 24.

After participating in the drill, Plaintiff was diagnosed with a concussion. *Id.* ¶ 25. Plaintiff claims that her father brought concerns about his daughter's injury to Bartiss. *Id.* ¶ 27. Plaintiff alleges that Bartiss attributed Plaintiff's injuries to Plaintiff's weak neck, the coach's use of overinflated balls, the coach's use of a launching machine, and the cold weather at practice. *Id.* Following Plaintiff's complaints, Plaintiff alleges that Defendant did not intervene to stop the header drills, discipline Jobson, or oversee practices to ensure players' safety. *Id.* ¶ 33.

In August 2020, Plaintiff was diagnosed with a second concussion after a similar header drill. *Id.* ¶ 34. She was also diagnosed with persistent and debilitating dizziness, post-concussion syndrome, persistent postural-perceptual dizziness, central vestibular disorder, dysautonomia, depression, and anxiety. *Id.* ¶ 36. Plaintiff asserts that as a result, she had to take a leave of absence from school and now requires full-time assistance from her parents for daily activities. *Id.* ¶¶ 37, 38.

Defendant filed a Motion to Dismiss all of Plaintiff's claims. ECF No. 5. Plaintiff filed a Response in Opposition to the Motion to Dismiss in which she conceded she pled insufficient facts to support the negligent hiring claim and stipulated to its dismissal but disputed the rest of Defendant's Motion to Dismiss. ECF No. 6. Defendant subsequently filed a Reply to the Response. ECF No. 7.

## II.     LEGAL STANDARD

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. However, in resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

### A. Assumption of Risks and Release Agreement

Defendant alleges, and Plaintiff does not appear to dispute, that Plaintiff signed an Assumption of Risks, Release and Waiver of Liability and Indemnity and Hold Harmless Agreement each year that she was a member of the soccer team. Defendant contends that the executed releases should be considered by the Court in deciding the Motion to Dismiss Plaintiff's ordinary negligence claim. ECF No. 5 at 7 n.3.

Documents attached to or incorporated by reference in the complaint may be considered in a motion to dismiss. *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2nd Cir. 2011). However, the plaintiff's reliance on the "document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a motion to dismiss." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002).

The Court finds that it is inappropriate to consider the releases at this stage. Plaintiff does not reference the executed releases anywhere in her Complaint nor does it appear that she relied on them in drafting her Complaint. It is therefore inappropriate for the Court to consider the release in deciding Defendant's 12(b)(6) Motion to Dismiss.

Alternatively, Defendant moves the Court to consider the executed releases by converting the Motion to Dismiss to a motion for summary judgment. ECF No. 5 at 7 n.3. Federal Rule of Civil Procedure 12(d) requires a 12(b)(6) or 12(c) motion to be treated as a Rule 56 motion for summary judgment if (1) matters outside the pleadings are presented and (2) those matters are not excluded by the court. Fed. R. Civ. P. 12(d). If matters outside the pleadings are presented, the Court has "complete discretion" to exclude them. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988). This Court recommends excluding the appendix material and

declining to convert Defendant's 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment. This ruling is without prejudice to Baylor refiling a motion for summary judgment at a later stage in the litigation.

### B. Competitive Sports Doctrine

Plaintiff asserts claims of ordinary negligence, negligent hiring[1], monitoring and oversight, negligent retention, and gross negligence. ECF No. 1 ¶¶ 43, 49, 54, 58. All claims stem from actions occurring while the Plaintiff was participating on the Baylor Women's Soccer Team. Defendant alleges that it owed no ordinary negligence duty to Plaintiff under the competitive sports doctrine. The Texas Supreme Court has not explicitly set forth a controlling duty standard in the context of sports related injuries. *See Southwest Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 271 (Tex. 2002) (noting that "this Court has not spoken on the issue of liability in the context of sports injuries" and declining to adopt one of the three different approaches for tort liability in sports injury cases).

The three approaches that the Texas Supreme Court acknowledged in sports-related injury cases are: (1) a reckless or intentional standard; (2) a traditional negligence standard; or (3) the inherent risk standard. *Id.* at 272. As the Texas Supreme Court has expressly declined to adopt a specific standard, this is still an open question of law. Although the parties only address the inherent risk standard, the Court finds that the Complaint states a plausible claim for relief under all three of the standards. *See Estate of Newton v. Grandstaff*, Civil Action No. 3:10-CV-0809-L, 2011 WL 2678933 at *4 (N.D. Tex. July 8, 2011) (analyzing the plaintiff's complaint under all three standards in deciding on a 12(b)(6) motion to dismiss).

---

[1] Plaintiff has withdrawn her negligent hiring claim as noted above and below in Section D.

Plaintiff claims that Baylor repeatedly exposed her to these header drills that allegedly deviated from the conduct inherent to the sport throughout an entire season. Specifically, Plaintiff pleads that the magnitude of the risk she was subjected to was greater than the risk of head and neck injuries inherent to the sport of soccer, that Defendant was the only collegiate program in the nation conducting these types of drills, that Defendant overinflated the soccer balls used in the drills, and that she was repeatedly exposed to these header drills.

      i.    **Reckless or Intentional**

Under a reckless or intentional standard, Plaintiff must prove that Defendant's conduct was either reckless or intentionally injurious. *Id.* A person acts recklessly if (a) the person knows of the risk of harm created by the conduct or knows facts that make the risk obvious to another in the person's situation, and (b) the precaution that would eliminate or reduce the risk involves burdens that are so slight relative to the magnitude of the risk as to render the person's failure to adopt the precaution a demonstration of the person's indifference to the risk. Restatement Third, Torts: Liability for Physical and Emotional Harm § 2.

Plaintiff does not allege that Defendant acted intentionally. However, given Plaintiff's claims that Defendant was the only women's collegiate program in the nation implementing these drills, that Defendant overinflated the soccer balls, and that she was repeatedly exposed to the header drills even after complaining to athletic training personnel, Plaintiff has pled sufficient facts to state a plausible claim that Defendant acted recklessly.

      ii.    **Traditional Negligence**

Under a traditional negligence standard, Defendant owes an ordinary duty of care. Accepting as true Plaintiff's pleadings that Defendant's acts substantially deviated from what was

the standard in collegiate soccer programs across the nation, it is reasonable to conclude that Defendant owed and breached a legal duty of ordinary care.

### iii. Inherent Risk

Under the inherent risk standard, a defendant owes no negligence duty to the plaintiff if the risk that resulted in the plaintiff's injury is inherent in the nature of the particular sport. *Chrismon v. Brown*, 246 S.W.3d 102, 111 (Tex. App.—Fort Worth 1998, no pet.). Alternatively, a defendant owes an ordinary negligence duty to the plaintiff if the risk that resulted in the plaintiff's injury is not inherent in the nature of the sport. *Id.* at 112. When determining if conduct is inherent to the sport at issue, factors to consider include: (i) the nature of the sport in question; (ii) the conduct that is generally accepted in the sport; and (iii) the risks resulting therefrom. *Id.* at 111. These factors must be considered from an objective standard. *Id.*

Plaintiff concedes that "heading" is an integral part of soccer, but she claims the method in which this skill was practiced is not integral to the sport. ECF No. 1 ¶¶ 16, 19. Plaintiff states that heading is a legal action in soccer, but that it carries a risk of head and neck injuries. ECF No. 1 ¶ 16. Plaintiff claims that Baylor University is the only women's soccer program in the country to use the specific header drills complained of. *Id.* ¶ 18. Although the risk of head and neck injuries may be inherent to the sport of soccer by way of heading, Plaintiff alleges the magnitude of the risk that she was subjected to is not. *Id.* ¶¶ 19–20. Defendant argues that an injury may be inherent to the sport even when the actual act deviated from the nature of the sport. ECF No. 5 ¶ 17. *See Dunagan v. Coleman*, 427 S.W.3d 552, 555 (Tex. App.—Dallas 2014, no pet.) (holding that a pitcher who threw a fast overhand pitch in an underhand slow-pitch softball game and injured a catcher owed no negligence duty).

The Court finds that Plaintiff pleads sufficient facts to reasonably infer that the repetitive use of the header drills at issue is not an integral part of participating in soccer. Taking Plaintiff's allegations as true, it is reasonable to infer that repeatedly subjecting soccer players to header drills with overinflated soccer balls while no other women's collegiate program in the nation does the same is not an inherent risk in participating in soccer.

### C. Ordinary Negligence

Plaintiff asserts a negligence claim against the Defendant both directly and vicariously based on Coach Jobson's actions. *Id.* ¶ 43. An employer is vicariously liable for the negligence of an employee if the employee was acting "within the scope of employment" while committing a negligent act. *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 583 (Tex. App.— Houston [14th Dist.] 2005, no pet.). Plaintiff states that Jobson was the head coach of the Women's Soccer Team while Plaintiff attended Baylor University. ECF No. 1 ¶ 11. Plaintiff also states that Defendant had a duty of care at all times to provide her with a safe environment as an athlete. *Id.* ¶ 41. Further, Plaintiff claims that Jobson, while acting within the scope of employment, subjected her to the dangerous and repetitive header drills that directly caused her injuries. *Id.* ¶ 42.

Defendant's argument relies solely on the Assumption of Risks, Release and Waiver of Liability and Indemnity and Hold Harmless Agreements that Plaintiff signed. As discussed above, the Court declines to consider this extrinsic evidence in ruling on the Motion to Dismiss. Although this provides an independent basis for denying Defendant's Motion to Dismiss as to Plaintiff's ordinary negligence claims, the Court analyzes the Plaintiff's Complaint for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Plaintiff pled sufficient facts that, taken as true, support an inference that Baylor is liable for negligence. As addressed in the Court's discussion of the competitive sports doctrine, Plaintiff's Complaint alleges facts that support an inference that Jobson subjected the Plaintiff to conduct that carries a risk not inherent to the nature of soccer. It is therefore reasonable to infer that Jobson owed a duty of care to provide the Plaintiff with a safe environment while Jobson was the head coach. It is also reasonable to infer that Jobson breached this duty by subjecting Plaintiff to the repetitive and allegedly dangerous header drills. Plaintiff claims she was diagnosed with a concussion after participating in the header drills during a February 2019 practice. ECF No. 1 ¶ 25. Plaintiff claims she suffered her second diagnosed concussion during an August 2020 practice after continuously participating in the header drills over a three-day period. ECF No. 1 ¶ 34. Taking the Complaint as true, it is reasonable to infer that these drills were the proximate cause of Plaintiff's injuries. Plaintiff's Complaint pleads sufficient facts to survive a 12(b)(6) motion for her ordinary negligence claim against the Defendant based on vicarious liability.

Plaintiff also attempts to impose direct liability upon the Defendant because Defendant "allowed its coaching staff and athletic training staff to sanction" the conduct complained of. *Id.* ¶ 45. This theory of liability merges with Plaintiff's negligent hiring, monitoring, oversight, and retention allegations and will be addressed therein.

The Court therefore recommends that Defendant's Motion to Dismiss be DENIED as to Plaintiff's ordinary negligence claim.

### D. Negligent Supervision

Plaintiff asserts a negligent hiring, monitoring and oversight claim against the Defendant. *Id.* ¶ 49. In Plaintiff's brief in opposition to Defendant's Motion to Dismiss, Plaintiff concedes that

she has not pleaded sufficient facts to support a claim for negligent hiring and stipulates to the dismissal of the negligent hiring portion of Count II. ECF No. 6 at 3.

The requirements for negligent monitoring and oversight, or negligent supervision as it is referred to in Texas, are (1) a legal duty to supervise employees, (2) the employer breached this duty, and (3) the breach proximately caused the plaintiff's injuries. *Cobos v. Bluefin Water Sols., LLC*, No. PE:21-CV-00072, 2002 U.S. Dist. LEXIS 50592, at *24 (W.D. Tex. March 22, 2022). Texas courts consider several interrelated factors when imposing a duty upon a defendant. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). These factors include "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.*

In the Complaint, Plaintiff states that the risks associated with heading include the risk of acute and chronic brain damage and the risk of sustaining head and neck injuries such as strains, concussions, and whiplash. ECF No. 1 ¶¶ 17, 28. Plaintiff alleges that the risk was foreseeable because Defendant was on notice of the dangerous conduct and on notice of Plaintiff's prior injury. *Id.* ¶¶ 13, 17, 23–25, 28. The likelihood of Plaintiff's injury was high because she had allegedly suffered a previous concussion as a direct result of the header drill. *Id.* ¶ 25. Additionally, Plaintiff undermines the social utility of this conduct by alleging that Baylor University was the only women's soccer program in the nation utilizing this drill. *Id.* ¶ 18. Taking Plaintiff's contentions as true, it is reasonable to infer that Defendants could have put an end to the conduct without hindering the success of the Women's Soccer Team. Considering the controlling factors, Plaintiff's complaint included sufficient facts to impose a duty upon the Defendant. Plaintiff also included

sufficient facts to meet the breach and causation elements for the negligent supervision claim. *Id.* ¶¶ 50–52.

The Court therefore recommends that Defendant's Motion to Dismiss be GRANTED as to Plaintiff's negligence hiring claim but DENIED as to Plaintiff's negligent monitoring and oversight claims.

### E. Negligent Retention

Plaintiff asserts a negligent retention claim against the Defendant. *Id.* ¶ 54. The Texas Supreme Court has "not ruled definitively on the existence, elements, and scope" of negligent retention claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010). Other federal courts follow the logic of the intermediate courts in Texas, requiring a Plaintiff to prove that the employee was incompetent or unfit and that the employer knew or should have known of any alleged incompetence or unfitness. *See e.g. Fernandez v. Transport Designs, Inc.*, Civil No. SA-16-CA-022-OLG, 2017 WL 1294556 at *3 (W.D. Tex. Feb. 28, 2017). Thus, it is appropriate to apply this standard to the present case. *See also* TXJUR EMPLOYER § 337 (discussing negligent retention).

The threshold inquiry in a negligent retention case involves finding a duty owed by the defendant to retain only competent employees. *Porter v. Nemir*, 900 S.W.2d 376, 385 (Tex. App.—Austin 1995, no writ). Additionally, the employer must have known or should have known through the exercise of reasonable care that the employee was incompetent or unfit. *Id.* Furthermore, the injury sustained by the plaintiff must be the result of the continued employment of an incompetent employee. *Id.*

Plaintiff pleaded sufficient facts to impose a duty upon the Defendant, and Plaintiff incorporates those facts into the negligent retention claim. ECF No. 1 ¶ 53. Plaintiff also alleges

that Defendant knew or should have had knowledge regarding Jobson's fitness for the coaching position. *Id*. at 54. Specifically, Plaintiff pleads that Defendant knew or should have known that its employees' actions increased the risk of harm and injury to the players as Plaintiff and several other players reported pain associated with the header drill run by Jobson to one of Defendant's employees, and that Defendant's staff were notified of Plaintiff's concussion diagnosis following the drill in February 2019. *Id.* ¶¶ 54, 23, 26, 28. Plaintiff also claims that Defendant's retention of Jobson led to Plaintiff and other players being forced to participate in another set of repetitive header drills, which resulted in Plaintiff's second concussion diagnosis. *Id*. ¶¶ 30, 34. Taken together, these facts provide sufficient support to reasonably infer that Defendant was negligent in the retention of its employees.

The Court therefore recommends that Defendant's Motion to Dismiss be DENIED as to Plaintiff's negligent retention claim.

**F.  Gross Negligence**

Plaintiff asserts a gross negligence claim against Defendant. ECF No.1 ¶¶ 57–62. Gross negligence involves an act or omission which (1) when viewed objectively from the standpoint of the actor, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) of which the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code § 41.001(11); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118 (Tex. 2012). *See also Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Plaintiff contends that heading places a great deal of stress on a player's head and neck which can lead to strains, concussions, and whiplash. ECF No.1 ¶ 17. The members of the Women's Soccer Team were repetitively exposed to this risk, which led to Plaintiff's concussion. *Id.* ¶¶ 12, 24. Taking

these allegations as true, it is reasonable to infer that the Defendant was involved in acts or omissions involving an extreme degree of risk to the players. Plaintiff's Complaint states that Defendant's coaching staff and athletic trainers were made aware of the risks involved when she and several other women on the team complained to a Baylor employee regarding the repetitive drills. *Id.* ¶¶ 23-24. This allegation plausibly indicates that Defendant proceeded to implement the drill with indifference despite being aware of the risks complained of. Taking Plaintiff's allegations as true, she pleaded sufficient facts to support each element required for the gross negligence claim.

The Court therefore recommends that Defendant's Motion to Dismiss be DENIED as to Plaintiff's gross negligence claim.

### III.   RECOMMENDATION

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that Defendant's Motion to Dismiss (ECF No. 5) be **GRANTED** as to the negligent hiring claim and **DENIED** as to the remaining claims.

### IV.   OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–

53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED** this 27th day of June, 2022.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE