IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| EVA MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 22-CV-00195-ADA |
| | § | |
| BAYLOR UNIVERSITY. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT BAYLOR UNIVERSITY'S
OBJECTION TO REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE JUDGE:

COMES NOW, BAYLOR UNIVERSITY ("Defendant"), and makes and files this its Objection to the Report and Recommendation of the United States Magistrate Judge, and would respectfully show the Court as follows:

**I.
PROCEDURAL BACKGROUND**

1. Plaintiff filed suit against Defendant on 2-24-22, alleging injuries incurred while training as a member of the Baylor University Women's Soccer Team. Doc. 1, Pl.'s Orig. Complaint.

2. On 4-25-22, Defendant filed its Motion to Dismiss for Failure to State a Claim, and Alternatively, Motion for Summary Judgment. Doc. 5, Def.'s Mot. to Dismiss. Plaintiff responded on 5-9-22. Doc. 6, Pl.'s Brief in Opposition to Mot. to Dismiss. Defendant Replied on 5-16-22. Doc. 7, Def.'s Reply to Response to Mot. to Dismiss.

3. On 6-27-22, the Magistrate Judge filed a Report and Recommendation. Doc. 8. The document was received by the undersigned on 6-27-22. This Objection to the Magistrate's Report and Recommendation is thus timely filed pursuant to the deadline in the Report and 28 U.S.C. § 636(b)(1)(C).

## II.
## LEGAL STANDARD

4. A party objecting to a Magistrate Judge's report and recommendation is entitled to a *de novo* determination of the portions of the report to which it objects. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). The District Court has wide discretion to consider and reconsider the Magistrate Judge's recommendation. *See Chung v. Bed Bath & Beyond, Inc.*, 2011 U.S. Dist. LEXIS 151104 (W.D. Tex. 2011). The Court may accept, reject, or modify the report, in whole or in part. *Id.*

## III.
## OBJECTIONS

### A. Plaintiff's Ordinary Negligence Claims Should Be Dismissed Because They Are Barred By The Competitive Sports Doctrine.

5. Defendant objects to the Magistrate's finding that Plaintiff has pled sufficient facts to proceed on her ordinary negligence claims, as well as to the Magistrate's recommendation that the Motion to Dismiss be denied as to Plaintiff's ordinary negligence claim. Proper application of the Competitive Sports Doctrine requires dismissal of the ordinary negligence claim. Plaintiff's ordinary negligence claims are barred by the competitive sports doctrine, as the facts pled merely allege an injury while practicing a skill common to soccer.

6. A competitive sports participant assumes the risk of injuries that are inherent in the nature of the sport. *Dunagan v. Coleman*, 427 S.W.3d 552, 556-557 (Tex. App.—Dallas 2014, no pet.). To recover for an injury arising from a sport in which the risk is inherent in the nature of the

sport, the plaintiff must prove that the defendant acted recklessly or intentionally. *Id.* at 555. A plaintiff who can prove only that the defendant was negligent cannot prevail. *Id.* at 557. The inherent risks of a sport do not change depending upon whether or not the conduct takes place in practice or in an actual competition. *Id.* at 557.

7. In *Chrismon*, a volunteer assistant softball coach was injured by the head coach when the head coach's bat slipped out of his hands as he hit grounders in a practice drill. *Chrismon v. Brown*, 246 S.W.3d 102 (Tex. App.—Houston 2007, no pet.). The Court held that if the risk that resulted in the plaintiff's injury is inherent in the nature of the sport, then the participant-defendant owes no negligence duty. The Court held that the plaintiff needed to provide evidence that the risk that resulted in the plaintiff's injury was not inherent in the nature of the sport at issue, considering from an objective standpoint: (i) the nature of the sport in question; (ii) the conduct that that is generally accepted in the sport; and (iii) the risks resulting therefrom. The risk of being struck by an aluminum bat was inherent to the sport of softball, and the coach running the training drill was considered a "participant," so no negligence duty was owed.

8. Other courts have similarly held that sports participants do not owe ordinary negligence duties if the injury at issue is inherent to the sport even when the actual act deviated from the nature of the sport. *See Dunagan*, 427 S.W.3d at 555 (pitcher that threw a fast overhand pitch in an underhand slow-pitch softball game and injured a catcher owed no negligence duty); *Monk v. Phillips*, 983 S.W.2d 323 (Tex. App.—Fort Worth 1998, no pet.) (golfer that shanked an iron shot owed no duty to another golfer hit by the ball). Plaintiff's claimed injury in this case is inherent to the sport of soccer, as it allegedly resulted from a maneuver—the header—that is common to the sport of soccer. No ordinary negligence duty was owed by Defendant to Plaintiff.

9.      The lack of specificity in pleading is most notable in Paragraph 18 of Plaintiff's Original Complaint. The Magistrate Judge's recommendation relies upon Plaintiff's clearly hyperbolic and vague allegation that "Baylor was the only women's soccer program in the country utilizing this drill."[1] Defendant strongly disputes this allegation. Regardless, even if the drills were unique, Defendant still owes no ordinary negligence duties. In *Dunagan*, the decision to throw an overhand pitch in a slow-pitch softball game was certainly an act outside of the usual scope of the game—but that is not the determinative issue. At issue was the nature of the injury and risk—being struck by a baseball—in determining the applicability of the Competitive Sports Doctrine. Similarly, here, the risk at issue—concussion due to header—is inherent to the sport, triggering application of the Competitive Sports Doctrine.

   B. **Negligent Monitoring and Oversight.**

10.     Defendant objects to the Magistrate's finding and recommendation that Defendant's Motion to Dismiss be denied as to Plaintiff's negligent monitoring and oversight claims.

11.     The Magistrate correctly states that negligent supervision requires facts indicating: (1) the defendant owed a legal duty to supervise its employees; (2) the employer breached the duty; and (3) the breach proximately caused the plaintiff's injuries. *Cobos*, 2022 U.S. Dist. LEXIS 50592 at *24.

12.     In order to survive dismissal of a negligent supervision claim, the Plaintiff must at least discuss "how much supervision is typical . . . but yet was not provided." *Cobos*, 2022 U.S.

---

[1] This assertion is made as a statement of absolute fact, which would mean Plaintiff, or her counsel, have knowledge of the practices of hundreds of women's soccer programs at all levels of collegiate soccer. The statement is not even made "upon information and belief." The Magistrate's report relies heavily on this assertion, as the report refers to it five times. Additionally, Baylor denies the vague assertion. The sentence itself is unclear in its use of "this drill" and "punting." It is unclear what drill is being referenced.

Dist. LEXIS 50592 at *19. The Plaintiff must provide at least some information regarding what the supervision or training policies were, or what training or supervision should have been provided but was not. *Acuna v. Covenant Transp., Inc.*, 2020 U.S. Dist. LEXIS 189829 (W.D. Tex. Oct. 13, 2020). Mere "labels and conclusions" do not provide a basis upon which the court is able to sustain a negligent supervision claim, rendering the claim "implausible on its face." *Cobos,* 2022 U.S. Dist. LEXIS 50592 at 25. Plaintiff alleges bare conclusions that Defendant "failed to monitor and review" the performance of the staff, and failed to "create, implement, and enforce" rules to protect Plaintiff, without any specific discussion about what was in place or what should have been in place. Doc. 1, Pl.'s Orig. Complaint at ¶ 50. There are no facts alleged that support the conclusory recitation of negligent "monitoring and oversight."

13. The Magistrate seems to analyze the factual allegations of this claim in terms of Defendant's supervision of the *Plaintiff.* The negligent supervision cause of action is a direct claim that relates to a Defendant's alleged failure to supervise its own employees. There are no factual allegations pertaining to what supervision or training policies should have been in place to monitor the conduct of the soccer team's coaching staff.

### C. Negligent Retention.

14. Defendant objects to the Magistrate's finding and recommendation that Defendant's Motion to Dismiss be denied as to Plaintiff's negligent retention claim.

15. A negligent retention claim must include allegations that the defendant was negligent in "retaining in his employ an incompetent servant," where this servant is of such quality or condition that the "master knows or by the existence of reasonable care should have known was incompetent or unfit." *Porter v. Nemir*, 900 S.W.2d 376 (Tex. App.—Austin—1995, no writ).

16. In *Cobos,* this court noted that to survive a 12(b)(6) Motion to Dismiss, the plaintiff must allege facts indicating that the defendant "had some reason to know" that the tortfeasor was unfit to perform his job duties, and yet "still retained him as an employee." *Cobos*, 2022 U.S. Dist. LEXIS 50592 at *19. There are no factual allegations in Plaintiff's Original Complaint alleging how Baylor University personnel with authority over the coaching staff "had some reason to know" of any alleged wrongdoing by the staff working with the women's soccer team. As such, there are not sufficient facts pled that support a negligent retention claim. The only assertion of facts to support this claim is that a single player (Plaintiff) sustained a concussion in February 2019, but that the same player (Plaintiff) recovered and competed and practiced for the entire 2019 season without a concussion. This bare assertion is insufficient to support a claim for negligent retention.

### D. Gross Negligence.

17. Defendant objects to the Magistrate's finding and recommendation that Defendant's Motion to Dismiss be denied as to Plaintiff's gross negligence claim. Plaintiff's factual allegations are insufficient.

18. Plaintiff has not pled facts sufficient to give rise to a claim for gross negligence. Plaintiff instead incorporates the previous paragraphs and labels the conduct "gross" negligence. In this same section, Plaintiff then re-labels the conduct as "negligent, reckless, intentional, wanton and depraved" but again provides no facts to support the multiple labels. *Id.* at ¶ 46.

19. *Dunagan* is instructive in illustrating the high standard of gross negligence in the context of sports. In *Dunagan*, two friends were teammates on a slow-pitch softball team. *Dunagan*, 427 S.W.3d at 554. While warming up, the defendant threw several underhand pitches to "locate the plate." *Id.* The defendant, who had played baseball at the high school level, then

proceeded to throw two overhand curve balls, one of which nearly struck an umpire. *Id.* The umpire signaled to the defendant that he needed to stop throwing curveballs. *Id.* Despite this warning, the defendant fired an overhead "hard rising fastball," which struck the plaintiff catcher in the mouth. There was no signal given by the defendant indicating that he intended to throw a header while warming up for a slow-pitch softball game. *Id.* The catcher (eventually the plaintiff) was not wearing any protective equipment. *Id.* at 559.

20. Despite these facts, the court in *Dunagan* determined that none of this evidence indicates that the pitcher was aware, or should have been aware, of an *unreasonable* risk of harm such that the conduct rose to a level *substantially greater* than mere negligence. *Id.* at 559.

21. The *Dunagan* case sets a high bar for what constitutes gross negligence in the context of sport. The *Dunagan* defendant injured the plaintiff while practicing a skill that went beyond skills involved in slow-pitch softball and ignoring an official—still, this conduct did not satisfy the gross negligence standard. The conduct alleged here similarly does not meet the standard. Plaintiff has not pled facts that give rise to a claim for gross negligence. Again, the Magistrate relies heavily on the hyperbolic assertion as an absolute fact that "Baylor University was the only women's soccer program in the country utilizing this drill."[2]

### E. Release and Assumption of Risk.

22. As part of its Motion to Dismiss, Defendant requested that the Court consider Assumption of Risk and Release documents as part of its Motion to Dismiss, or alternatively, that the Motion to Dismiss be converted to a Motion for Summary Judgment so that the releases could

---

[2] The Magistrate also cites ₱ 19 of Pl.'s Original Complaint, which alleges "upon information and belief, these extremely dangerous and repetitive header drills in practice are not used in any level of women's collegiate soccer." Allegations made "upon information and belief, without more, fail to provide sufficient facts to state a claim to relief that is plausible on its face." *See Funk v. Stryker Corp.*, 673 F. Supp. 2d 522 (S.D. Tex. 2009). There is no description of the manner in which Plaintiff came to this understanding "upon information and belief."

be considered in that context. Defendant objects to the Magistrate' recommendation that the Motion to Dismiss should not be converted into a Rule 56 Motion for Summary Judgment. Should this Court decline to dismiss Plaintiff's ordinary negligence claims pursuant to the Competitive Sports Doctrine, Defendant urges the Court to consider the Release documents in the context of a Motion for Summary Judgment and dismiss the Plaintiff's ordinary negligence claims on grounds that Plaintiff has already released claims arising from her participation in intercollegiate athletics.

23. Upon arrival to Baylor, Plaintiff signed an Assumption of Risks, Release and Waiver of Liability and Indemnity and Hold Harmless Agreement. The document includes the following language:

> I UNDERSTAND THAT PARTICIPATION IN INTERCOLLEGIATE ATHLETICS INVOLVES A RISK OF INJURY WHICH MAY RANGE IN SEVERITY FROM MINOR TO CATASTROPHIC, INCLUDING, BUT NOT LIMITED TO, PERMANENT PARALYSIS, BONE OR JOINT INJURY, CONCUSSION, BRAIN INJURY, OTHER CHRONIC DISABLING CONDITIONS, AND EVEN DEATH."

Doc. 5-1, Appendix at 0002-0003.

24. Mitchell signed four such documents with similar language for each of the three academic years she attended Baylor. Doc. 5-1, Appendix at 0001-0009.

The timeline of events is as follows:

- Spring Semester 2019    Plaintiff signs initial Assumption of Risks form.

- February 2019    Plaintiff alleges that she suffers first concussion.

- 2019-2020 School Year    Plaintiff signs second and third Assumption of Risks forms.

- Fall 2019    Plaintiff competes in Fall 2019 soccer season.

- 2020-2021 School Year    Plaintiff signs fourth Assumption of Risks form.

- August 2020    Plaintiff alleges diagnosis of second concussion.

Plaintiff enrolled at Baylor for the spring semester of 2019 (academic year 2018-2019). Plaintiff continued in academic years 2019-2020 and 2020-2021. After Plaintiff's first alleged concussion in February 2019, she continued her playing career in academic years 2019-2020 and 2020-2021 and signed the Assumption of Risks document in each academic year. In executing these documents, Plaintiff acknowledged that she was "voluntarily choosing to participate in Intercollegiate Athletics at Baylor University." Doc. 5-1, Appendix 0002. She agreed that she understood the "nature of Intercollegiate Athletics and associated risks and dangers," that she "knowingly and voluntarily" accepted and assumed "responsibility for each of these risks and dangers, and all other risks and dangers that could arise out of or occur during" her participation in Baylor University Intercollegiate Athletics. Doc. 5-1, Appendix 0002.

25. Plaintiff further agreed to "release, waive, discharge, and covenant not to sue, and agree to hold harmless for any and all purposes" Baylor University from any and all "liabilities, claims, demands, or injuries" sustained while participating in athletics. Doc. 5-1, Appendix 0002. The release did not include claims of willful misconduct, gross negligence, or intentional torts.

26. After entering these initial agreements, Plaintiff participated in practice and competition as a member of the Baylor Intercollegiate Athletic women's soccer team. She continued to participate in practice and competition after signing each of the multiple assumption of risk and waiver of claims. The Court should consider these assumptions of risk and release documents in the context of a Motion for Summary Judgment.

## IV.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court sustain its Objections to the Magistrate Judge's Report and Recommendation, and grant Defendant's Motion to Dismiss, and alternatively that the Court convert the Motion to a Motion for Summary

Judgment, and that Defendant have such other and further relief to which it may show itself justly entitled.

        Respectfully submitted,

        **WATSON, CARAWAY,**
        **MIDKIFF & LUNINGHAM, LLP**

        */s/ David Luningham*
        David Luningham
        State Bar No. 12698850
        dluningham@watsoncaraway.com
        Ryan Trammell
        State Bar No. 24085877
        rtrammell@watsoncaraway.com
        Fort Worth Club Building
        306 W. 7th Street, Suite 200
        Fort Worth, Texas 76102
        817/870-1717
        817/338-4842 (FAX)
        **ATTORNEYS FOR DEFENDANT**
        **BAYLOR UNIVERSITY**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies on this 11th day of July, 2022, that a true and correct copy of the foregoing document was served via e-filing on all parties in accordance with the Federal Rules of Civil Procedure.

        */s/ David Luningham*
        David Luningham